Slip Op. 17-157

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CONSOLIDATED FIBERS, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant. | **Before: Timothy C. Stanceu, Chief Judge**<br><br>**Court No. 14-00222** |

# OPINION AND ORDER

[Denying plaintiff's application for attorneys' fees and expenses under the Equal Access to Justice Act]

Dated: November 27, 2017

*Gregory S. Menegaz*, deKieffer & Horgan, PLLC, of Washington, D.C., for plaintiff Consolidated Fibers, Inc. With him on the brief were *Alexandra H. Salzman* and *J. Kevin Horgan*.

*Jason M. Kenner*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for defendant United States. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Amy M. Rubin*, Assistant Director.

Stanceu, Chief Judge: Consolidated Fibers, Inc. ("Consolidated Fibers") applies for attorneys' fees and other expenses pursuant to the Equal Access to Justice Act ("EAJA"). For the reasons discussed herein, the court denies the application.

## I. BACKGROUND

Consolidated Fibers, an importer of polyester staple fiber ("PSF") from Korea, commenced this action in 2014 to contest the denial by Customs and Border Protection ("Customs" or "CBP") of its protest of CBP's reliquidation of a single entry of PSF at an antidumping duty rate of 48.14% *ad valorem*. Summons (Sept. 19, 2014), ECF No. 1.

The uncontested facts relevant to plaintiff's EAJA application, as set forth in the submissions of the parties, and relevant facts ascertainable from Federal Register publications of which the court may take judicial notice, are presented below.

Consolidated Fibers made the entry of PSF that resulted in this litigation, Entry No. 315-4707817-5, on December 7, 2005, depositing estimated antidumping duties at the rate of 7.91% *ad valorum*. At the time the entry was made, PSF from Korea was subject to an antidumping duty order. *See Certain Polyester Staple Fiber from Korea: Notice of Amended Final Determination and Amended Order Pursuant to Final Court Decision*, 68 Fed. Reg. 74,552 (Int'l Trade Admin. Dec. 24, 2003) ("*Amended Order*"). The exporter of the merchandise on the entry, Dongwoo Industry Co. ("Dongwoo"), was a reviewed exporter/producer in a periodic administrative review of the antidumping duty order conducted by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department"), covering a period of review from May 1, 2005 through April 30, 2006. *Certain Polyester Staple Fiber from Korea: Final Results of the 2005-2006 Antidumping Duty Administrative Review*, 72 Fed. Reg. 69,663 (Int'l Trade Admin. Dec. 10, 2007) ("*Final Results*"). As a result of the review, liquidation of the entry was administratively suspended pursuant to 19 U.S.C. § 1675.[1]

On December 10, 2007, Commerce published the final results of the administrative review, in which it assigned an antidumping duty rate of 48.14% *ad valorum* to entries of subject merchandise produced or exported by Dongwoo. *Final Results*, 72 Fed. Reg. at 69,663-66. On January 14, 2008, Commerce issued liquidation instructions directing Customs to assess

---

[1] Citations to the U.S. Code are to the 2006 edition unless otherwise specified.

antidumping duties at the 48.14% rate on shipments of PSF from Korea produced or exported by Dongwoo. Customs failed to liquidate the entry in response to the instructions.

On May 6, 2011, Customs posted a bulletin notice pursuant to its regulation, 19 C.F.R. § 159.9(c)(2)(ii),[2] announcing that the entry had been deemed liquidated on June 10, 2008 at the entered antidumping duty rate of 7.91%. On June 17, 2011, Customs notified Consolidated Fibers that it had "rate advanced" the entry to the 48.14% rate specified in the Department's January 14, 2008 liquidation instructions, with interest. Customs then took action to reliquidate the entry on July 22, 2011, assessing antidumping duties at the 48.14% rate. Consolidated Fibers filed a protest of the reliquidation on November 14, 2011, which Customs denied on May 21, 2014. Plaintiff commenced this action on September 19, 2014 to contest the denial of the protest of the reliquidation. Summons.

Defendant moved for entry of confession of judgment on December 21, 2015, in which it stated its view that it was making this motion because plaintiff "will not sign a stipulated judgment on agreed statement of facts without certain concessions regarding attorney's fees pursuant to the Equal Access to Justice Act (EAJA)." Def.'s Mot. for Entry of Confession of J. in Pl.'s Favor 4 n.1 (Dec. 21, 2015) ("Mot. for Confession of J."), ECF No. 28. The judgment entered in response to defendant's motion ordered reliquidation of the entry at an antidumping duty rate of 7.91% and the payment of interest as provided by law on the duty refunds. Judgment (May 16, 2016), ECF No. 31.

Plaintiff filed its EAJA application on June 15, 2016 pursuant to 28 U.S.C. § 2412 and USCIT Rule 54.1. Pl.'s App. for Attys' Fees and Other Expenses (June 15, 2016), ECF No. 33

---

[2] Citations to the Code of Federal Regulations are to the 2011 edition unless otherwise specified.

("Application"). In the application, plaintiff seeks an EAJA award of $30,980.18. Attach. 1 to Application (June 15, 2016), ECF No. 33-1 (Plaintiff's Proposed Order). Defendant opposed the application in its response, filed on August 19, 2016. Resp. in Opp. To Mot. for Fees pursuant to the EAJA (Aug. 19, 2016), ECF No. 36.

## II. DISCUSSION

Plaintiff claims entitlement to attorneys' fees and expenses under § 2412(d) of the EAJA, which in pertinent part provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). As an alternative to its application under § 2412(d), plaintiff requests attorneys' fees and expenses under a separate provision of the EAJA, § 2412(b), that authorizes shifting fees and expenses to the government "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b).

A. Plaintiff Does Not Qualify for an Award under § 2412(d) Because the Government's Position Was Substantially Justified

A court must award attorneys' fees and other expenses under § 2412(d) if: (1) the claimant is a prevailing party in a civil action brought by or against the United States; (2) the government's position was not substantially justified; (3) no special circumstances make an award unjust; and (4) the fee application is timely and supported by an itemized fee statement. *Libas, Ltd. v. United States*, 314 F.3d 1362, 1365 (Fed. Cir. 2003) (citing 28 U.S.C. § 2412(d)(1)(A)-(B); *INS v. Jean*, 496 U.S. 154, 158 (1990)). In addition to these criteria,

§ 2412(d)(2)(B) imposes financial eligibility standards under which a for-profit company may qualify for an EAJA award only if its net worth was not more than $7,000,000 and it had not more than 500 employees at the time the civil action was filed.  28 U.S.C. § 2412(d)(2)(B)(ii).

In this litigation, plaintiff attained the benefit it sought, *i.e.*, reliquidation of the entry at the entered rate of 7.91% and the payment of duty refunds with interest, and, therefore, prevailed in the civil action.  Because the court concludes, for the reasons discussed later in this Opinion and Order, that defendant's position was substantially justified, the court does not address the remaining factors.

The government bears the burden of demonstrating that its position was substantially justified.  *Libas*, 314 F.3d at 1365.  The term "substantially justified" means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.  That is no different from [a] reasonable basis in both law and fact."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks and citations omitted).  To meet its burden, the government must "show that it was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts."  *Gavette v. Office of Pers. Mgmt.*, 808 F.2d 1456, 1467 (Fed. Cir. 1986) (emphasis in original) (footnote omitted).  The analysis is independent of the results on the merits, and a party's prevailing in the underlying case does not give rise to a presumption that the government's position was not substantially justified.  *See Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*, 837 F.2d 465, 467 (Fed. Cir. 1988).

Defendant expressed no litigation position before the court, the case never having reached briefing on the merits.  Instead, following discovery defendant sought to conclude the litigation by satisfying plaintiff's claim in full.  Mot. for Confession of J.  A civil plaintiff may

recover under the EAJA for a government position taken at the agency level.  *See Gavette*, 808 F.2d at 1467.  The government's burden, therefore, is to show that the position it took, which in this case was the one taken at the agency level in denying the protest, was substantially justified.

The issue presented in the protest, and in this litigation, was whether CBP's action to reliquidate Entry No. 315-4707817-5 at an antidumping duty rate of 48.14% had legal effect, such that Consolidated Fibers became liable as the importer of record for antidumping duties at that rate, or whether CBP's action was invalid, such that the antidumping duty liability was limited to the antidumping duty cash deposit made upon entry, which was at the rate of 7.91%.  The issue is affected by two statutory provisions.  The first is section 501 of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1501, which provides Customs general statutory authority to reliquidate entries.  The second is section 504(d) of the Tariff Act, 19 U.S.C. § 1504(d), under which Customs is required to liquidate an entry of merchandise subject to antidumping duties within six months after receiving notice that a suspension of liquidation has been removed.  In the event Customs fails to comply with § 1504(d) by accomplishing a timely liquidation, the provision effectuates a liquidation by operation of law (a "deemed" liquidation) at the rate and amount of duty asserted by the importer of record.  19 U.S.C. § 1504(d).

Publication in the Federal Register of a final determination in an antidumping duty proceeding, including the final results of an administrative review under 19 U.S.C. § 1675, constitutes notice to Customs that the suspension of liquidation has ended.  *Int'l Trading Co. v. United States*, 281 F. 3d 1268, 1275 (Fed. Cir. 2002).  In this instance, Customs failed to liquidate Entry No. 315-4707817-5 within the six-month period following the December 10, 2007 publication of the Final Results.  Therefore, the entry liquidated by operation of law in June

2008 at the antidumping duty cash deposit rate and amount Consolidated Fibers asserted at the time of entry, which was 7.91%.

Following the deemed liquidation, Customs was required by its regulations to issue a bulletin notice "within a reasonable period" after the deemed liquidation. 19 C.F.R. § 159.9(c)(2)(ii) ("The bulletin notice of liquidation will be posted or lodged in the customhouse within a reasonable period after each liquidation by operation of law"). In this case, Customs issued the bulletin notice nearly three years after the deemed liquidation, on May 6, 2011. Customs then issued a rate advance for the entry on June 17, 2011 and took action intending to accomplish a reliquidation at the 48.14% rate on July 22, 2011, within 90 days of issuing the notice of the original liquidation, the time period specified by 19 U.S.C. § 1501.

By regulation, a valid protest must contain a statement describing "[t]he nature of, and justification for the objection set forth distinctly and specifically with respect to each category, payment, claim, decision, or refusal." 19 C.F.R. § 174.13(a)(6). The regulations distinguish between a protest claim and the grounds the protestant offers for the claim. The time to amend a protest to add a new claim, for example, is limited to the original protest period, whereas a protestant may submit new or additional grounds for a protest claim until Customs acts on the protest. 19 C.F.R. §§ 174.14(a), 174.28. At the time Customs denied its protest, Consolidated Fibers had not amended it or added additional grounds. Its protest claim, simply stated, was that Customs lacked authority to reliquidate the entry because the entry had been deemed liquidated six months after publication of the Final Results. The "legal basis" section of the protest relied expressly on a single case, *International Trading v. United States*, 28 CIT 1, 16-18, 306 F. Supp. 2d 1265, 1278-79 (2004), *aff'd* 412 F.3d 1303, 1309 (Fed. Cir. 2005), and, implicitly, on 19 U.S.C. § 1504(d). The protest stated its grounds as follows:

> The facts and circumstances of this protest are identical to those raised in *International Trading*: the importer entered at a low rate; the final results of review published in the Federal Register established a higher rate; and Customs waited long after six months expired from the FR publication date to liquidate the entry at the higher rate. Just as the courts held in *International Trading*, Customs' belated liquidation was not lawful. Rather, the entry liquidated at the entered rate in June 2008 after the six months expired from publication of the final results.

Ex. 1 to Compl. 4 (Oct. 10, 2014), ECF No. 11 (Consolidated Fibers' Administrative Protest and Supporting Materials).[3] The protest requested "that CBP cancel its July 22, 2011 liquidation notice, declaring it null and void; and declare that Consolidated Fibers does not owe any duties with respect to Entry No. 315-4707817-5 other than those deposited at entry." *Id.*

The protest does not mention that section 501 of the Tariff Act, 19 U.S.C. § 1501, in the form in which it was in effect at the time the entry was made, was amended in December 2004 to provide expressly that Customs may reliquidate entries deemed liquidated under section 504 of the Tariff Act, 19 U.S.C. § 1504. 19 U.S.C. § 1501 (2006) ("A liquidation made in accordance with section 1500 *or 1504* of this title . . . *may be reliquidated* in any respect by the Customs Service, notwithstanding the filing of a protest, within ninety days from the date on which notice of the original liquidation is given or transmitted to the importer[.]") (emphasis added).[4] The judicial decision Consolidated Fibers cited in its protest involved an entry made prior the effective date of that amendment. The ground Consolidated Fibers put forth in the protest failed

---

[3] Plaintiff filed both public (ECF No. 8) and confidential (ECF No. 11) versions of the complaint, attaching exhibits only to the confidential version. While some of these exhibits contain confidential material (for example, a commercial invoice and a bill of lading), others do not. The court quotes only information not qualifying as confidential information and not designated for confidential treatment by means of bracketing.

[4] In 2016, Congress again amended section 501 of the Tariff Act to limit reliquidations to a period of ninety days following the original liquidation, including a deemed liquidation. Trade Facilitation and Enforcement Act of 2015, Pub. L. No. 114-125, § 911, 130 Stat. 122, 240 (2016) (amending 19 U.S.C. § 1501). This amendment does not affect the entry at issue in this litigation.

to address the issue in this case, which arises because of the length of time (nearly three years) that elapsed between the deemed liquidation and the bulletin notice of that liquidation. There is no dispute that the reliquidation occurred within the ninety-day period following the May 6, 2011 posting of the bulletin notice. Consolidated Fibers could have raised a protest ground that was at least plausible by arguing that the bulletin notice was not issued within a "reasonable period" as required by 19 C.F.R. § 159.9(c)(2)(ii) and therefore did not constitute effective "notice of the original liquidation" for purposes of 19 U.S.C. § 1501. According to such an argument, the 90-day reliquidation window in § 1501 could not have been triggered by an invalid bulletin notice, and the reliquidation was ineffectual as a result. However, Consolidated Fibers' protest did not raise any objection of this nature, either under the statute or the regulation, and it did not mention 19 C.F.R. § 159.9(c)(2)(ii).[5]

CBP's denial of Consolidated Fibers' protest followed the issuance of a ruling by CBP's Office of Regulations and Rulings, dated April 18, 2014, which set out the legal basis for denying the protest. *See* Exs. 1-2 to Compl. (Consolidated Fibers' Administrative Protest and Supporting Materials and Letter from Myles B. Harmon, Director, Commercial and Trade

---

[5] Plaintiff eventually, in its complaint before the court, raised the issue of whether the bulletin notice was posted within a "reasonable time":

> CBP's reliquidation more than three years after original liquidation of the entry subject to the aforementioned protest was contrary to law . . . . While CBP has the authority to reliquidate within ninety days from the date on which notice of the original liquidation is given (19 U.S.C. § 1501), as a matter of law CBP is obligated to issue a bulletin notice of the original deemed liquidation "within a reasonable period" of time after the deemed liquidation . . . . The issuance of such notice some three years later cannot lawfully be found to have been issued within a reasonable time of the deemed liquidation.

Compl. ¶ 33. But as the court has explained, the government did not take a contrary litigation position in any briefing before the court.

Facilitation Division, U.S. Customs and Border Protection, to Stephanie Allen, Senior Import Specialist, U.S. Customs and Border Protection, HQ H215035 (Apr. 18, 2014) ("Ruling Letter")). The ruling responds to the argument Consolidated Fibers raised in the protest, *i.e.*, that the deemed liquidation of the entry was final by operation of 19 U.S.C. § 1504(d), by explaining that the December 2004 amendment of section 501 of the Tariff Act provided Customs express authority to reliquidate a deemed liquidation, provided the reliquidation occurs within 90 days from the date on which notice of the original liquidation was given to the importer. Ex. 2 to Compl. 3 (Ruling Letter).

Although nothing would have prevented Customs, upon considering the protest, from addressing the question of whether the long time period prior to the issuance of the bulletin notice of the deemed liquidation rendered the reliquidation invalid, Customs was under no obligation to do so. *See* 19 U.S.C. § 1515(a); 19 C.F.R. § 174.13(a)(6). Customs was not required to decide a protest upon a ground the protestant could have raised (and should have raised) but did not. The ruling correctly responded to the sole protest ground Consolidated Fibers presented. Under that circumstance, the court is unable to conclude that Customs took a position that was not "substantially justified."

### B. Plaintiff Does Not Qualify for an EAJA Award Under 28 U.S.C. § 2412(b)

Even when a court finds the government's position substantially justified, the EAJA provides an alternative basis to award attorneys' fees and expenses when appropriate pursuant to either a separate statutory scheme or a common law cost-shifting analysis. 28 U.S.C. § 2412(b). Because plaintiff does not invoke a separate statutory scheme, the court considers whether a common law cost-shifting analysis justifies an award. While attorneys' fees typically are not recoverable in U.S. cases pursuant to the so-called "American Rule," under which parties

ordinarily are responsible for their own costs, an exception to this rule applies in "certain rare circumstances . . . when a party opponent is found to have 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Delphi Petroleum, Inc. v. United States*, 34 CIT 861, 863, 717 F. Supp. 2d 1340, 1343 (2010) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). However, "[b]ad faith is a high standard that warrants fee-shifting when a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled." *Id.* at 863-64, 1343-44 (internal quotation marks and citation omitted).

Plaintiff complains of long delays and faults the government for forcing it to engage in "protracted litigation." Application, Mem. In Support of Pl.'s App. for Attys' Fees and Other Expenses at 7-8, 11. In this litigation, action was joined when, pursuant to two extensions to which plaintiff consented, defendant filed its answer to the complaint on February 25, 2015. Pursuant to scheduling orders that were amended, also with plaintiff's consent, discovery was to end on December 4, 2015. Amend. Scheduling Ord. (Nov. 4, 2015), ECF No. 27. Shortly thereafter, on December 21, 2015, defendant moved for a confession of judgment. So even were the court to accept, *arguendo*, plaintiff's characterization of this litigation as "protracted" (a characterization the filings in this case do not support), it still would reject plaintiff's argument. The issue is not whether this litigation possibly could have been resolved earlier but whether the court could conclude that defendant "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46. The court sees no evidence that could support such a conclusion.

### III. CONCLUSION

Upon consideration of plaintiff's application for attorneys' fees and all papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that Plaintiff's Application for Attorneys' Fees and Other Expenses Pursuant to the Equal Access to Justice Act (June 15, 2016), ECF No. 33 be, and hereby is, denied.

/s/Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated: November 27, 2017
New York, New York